Jeremiah D. FINNEGAN, Appellant,

v.

The SQUIRE PUBLISHERS,
INC., Respondent.

No. WD 40862.

Missouri Court of Appeals,
Western District.

Feb. 21, 1989.

Jeremiah D. Finnegan, Thomas B. Sullivan III, Kansas City, for appellant.

Sam L. Colville, Joe Rebein, Kansas City, for respondent.

Before MANFORD, P.J., and TURNAGE and LOWENSTEIN, JJ.

MANFORD, Presiding Judge.

Jeremiah Finnegan was allegedly libeled by an advertisement in the January 22, 1987 issue of *The Squire's Other Paper*, which referred to him in his profession of attorney at law. Approximately fifteen months after the publication, on April 14, 1988, Finnegan brought this action in a Missouri state court against The Squire Publishers, Inc., the newspaper publishing company, for libel per se. The publishing company moved to dismiss the petition or for summary judgment on the basis that the Missouri borrowing statute, § 516.190, RSMo 1986, required application of the Kansas one-year statute of limitations rather than Missouri's two-year statute of limitations. The circuit court granted the motion to dismiss, determining that the claim was barred by the Kansas statute of limitations and, therefore, the court lacked jurisdiction. This appeal followed. The judgment is affirmed.

Finnegan is a resident of Kansas. The principal place of business of The Squire Publishers, Inc. is in the state of Kansas. The January 22, 1987 issue of *The Squire's Other Paper* was published in Kansas and first made available for free pick-up by the public in Kansas. *The Squire's Other Paper* was distributed in the Kansas City metropolitan area, which extends into both the state of Kansas and the state of Missouri. Finnegan is an attorney licensed to practice law in Missouri, but not in Kansas.

Finnegan's sole point on appeal contends that the trial court erred in dismissing his petition for libel per se because the cause of action for damages to Finnegan's reputation as an attorney did not accrue in Kansas where the newspaper containing the defamatory statements was first published, but rather in Missouri where Finnegan is licensed to practice law and where damages to his professional reputation were sustained. There is no question that had Finnegan filed his libel per se suit in Kansas on April 14, 1988, it would have been barred by the Kansas one-year statute of limitations for libel, § 60–514, K.S.A. (1983). Missouri's statute of limitations allows two years to bring a libel action. § 516.140, RSMo 1986. When a cause of action originates in a state other than Missouri, however, Missouri courts apply the foreign state's statute of limitations through the borrowing statute. Missouri's borrowing statute, § 516.190, RSMo 1986, reads, "Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." "Originated", as used in the borrowing statute, means "accrued." *Dorris v. McClanahan*, 725 S.W.2d 870, 871 (Mo. banc 1987); *Schnabel v. Taft Broadcasting Co., Inc.*, 525 S.W.2d 819 (Mo.App. 1975). The issue to be determined is in which state a cause of action for libel per se accrues, for the purpose of Missouri's borrowing statute, when a nonresident publishing company circulates in a multistate publication allegedly defamatory statements about a nonresident attorney who is licensed to practice law only in Missouri. This issue is one of first impression in Missouri. This court holds that, for the purpose of Missouri's borrowing statute, a cause of action for libel per se "originates" in the state where the allegedly libelous statement is first published. In so holding, this court relies heavily on the anti-forum shopping policy of Missouri's borrowing statute as discussed by the Court of Appeals for the Eighth Circuit in *Patch v. Playboy Enterprises, Inc.*, 652 F.2d 754 (8th Cir.1981). The plaintiff in *Patch* was a

Missouri resident who brought a libel action in Missouri state court against the nonresident publisher which circulated allegedly defamatory statements about the plaintiff in a nationwide publication. The allegedly defamatory material was first published in Illinois. Illinois law provided for a one-year statute of limitation for libel; Missouri law provided for a two-year statute of limitation for such an action. Plaintiff filed his libel suit in Missouri twenty-three months after publication. The court determined that Missouri's borrowing statute required the application of the Illinois one-year limitation period because the cause of action "originated" in Illinois where the issue of *Playboy* was first published. The anti-forum shopping policy of Missouri's borrowing statute was central to the holding in *Patch*. The *Patch* court explained that the purpose of a borrowing statute is primarily to prevent a plaintiff from forum shopping for a statute of limitations. *Patch*, 652 F.2d at 756. The borrowing statute prevents a plaintiff from gaining more time to bring an action merely by suing in a forum other than where the cause of action accrued. *Id.* Acknowledged in *Patch* was the Missouri case *Trzecki v. Gruenewald*, 532 S.W.2d 209 (Mo. banc 1976), which holds that residents and nonresidents are to be treated the same under the Missouri borrowing statute. Consequently, under the borrowing statute, the location where the cause of action accrues rather than the plaintiff's residency is the key factor.

In order to avoid the forum shopping consequences which the borrowing statute was designed to eliminate, Finnegan, like *Patch*, must be prevented from gaining more time to bring a libel per se action merely by filing suit in Missouri instead of the forum where the cause of action accrued. The allegedly libelous advertisement in *The Squire's Other Paper* was first published in Kansas, therefore, Finnegan's cause of action accrued in Kansas. The trial court did not err in ruling that the Kansas one-year statute of limitations, as applied through Missouri's borrowing statute, bars Finnegan's cause of action.

The respondent publishing company in the instant case directs this court's attention to a long line of Missouri cases which hold that in an action for defamation, the cause of action accrues in the county in which the defamation was first published. *See State ex rel. Allen v. Barker*, 581 S.W.2d 818, 826 (Mo. banc 1979); *Litzinger v. Pulitzer Publishing Co.*, 356 S.W.2d 81, 84 (Mo.1962), cert. denied, 374 U.S. 831, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963). These cases, however, are not directly on point because they address the issue of the location where a cause of action accrues for venue purposes.[1] Missouri cases, which hold that for venue purposes an action for defamation accrues in the county in which the defamation was first published, do not form the basis of this court's holding regarding accrual of a libel per se cause of action for borrowing statute purposes. Missouri's borrowing statute and venue statutes serve different policies. The borrowing statute is primarily designed to prevent a plaintiff from forum shopping to gain more time to initiate a cause of action. *Patch*, 652 F.2d at 756. A purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial. *Id.* at 757. Additionally, Missouri's venue statute prevents a plaintiff seeking damages for libel in a widely distributed publication from gaining privileges of venue not allowed by law to a plaintiff in tort actions other than libel, in which the cause of action could accrue only in one county. *See Litzinger v. Pulitzer Publishing Co.*, 356 S.W.2d at 85.

This court rejects Finnegan's contention that a cause of libel per se to an attorney's professional reputation accrues, for purposes of the borrowing statute, only in the state where the attorney is licensed to practice law. Finnegan argues that since he was an attorney licensed to practice law solely in Missouri and was neither licensed to practice nor practiced law in Kansas, the cause of action for libel per se

---

1. Section 508.010(6), RSMo 1986 states that in any action for defamation, the cause of action shall be deemed to have accrued in the county in which the defamation was first published.

to his professional reputation as an attorney accrued only in Missouri where the damage resulting therefrom was sustained, and not in Kansas where the wrong was done but no damage was sustained. First, Finnegan relies on § 516.100, RSMo 1986 [2] and *Elmore v. Owens–Illinois, Inc.,* 673 S.W.2d 434, 436 (Mo. banc · 1984) for the general rule that a civil cause of action accrues when and originates where damages are sustained and ascertainable. Finnegan's claim is that his damages were not sustained and were incapable of ascertainment when the libel per se was published in Kansas. Yet, in *Jones v. Pinkerton's Inc.,* 700 S.W.2d 456 (Mo.App.1985), this court specifically recognized that an essential element of the tort of libel is that the alleged defamatory material or statement be communicated or published to a third person. *Jones,* at 458. Plaintiff's reputation interest is invaded at the time of the publication, and arguably that is the time when his damage is sustained. *Id. Jones* established an exception to the rule that a libel cause of action accrues at the time when the defamatory statement is published, holding that the statute of limitations is tolled when factors outside plaintiff's control prevent his knowing either that he has suffered a legal wrong or that he has been damaged because of the wrong. *Id.* at 460. Hence, under Missouri law, a libel action accrues with respect to § 516.100 when the allegedly defamatory statement is communicated or published to a third person, unless an intervening factor outside plaintiff's control blocks ascertainment of the cause of action. No such factors appear in the instant case, thus, Missouri case law applying § 516.100 specifically to libel causes of action indicates that Finnegan's libel per se cause of action accrued on January 22, 1987 and originated in Kansas where *The Squire's Other Paper* was first published.

Second, in arguing that his cause of action accrued in Missouri where he is

licensed to practice law because only in Missouri could his professional reputation be damaged, Finnegan assumes that the multistate publication containing the allegedly defamatory statements did not damage his professional reputation in Kansas where the newspaper was published. This court will not adopt the assumption that an attorney's reputation can only be injured in the state where the attorney is licensed to practice law. A publication which tends to injure a person in his business or profession is libel per se, and actionable if it meets certain standards. *Buller v. Pulitzer Pub. Co.,* 684 S.W.2d 473, 477 (Mo.App. 1984). The words must (1) directly tend to injure or prejudice his profession, trade, business, or employment by imputing want of knowledge, skill, capacity, or fitness to perform or discharge the duties thereof and (2) be defamatory of the plaintiff in the line of his trade or calling in that it imputes fraud, want of integrity or misconduct. *Id.* Nothing in these standards would restrict the injury to the geographic area where a plaintiff conducts his or her trade or profession. Damage to a professional's reputation can occur in a state other than that in which he is professionally licensed, especially when the metropolitan area within which he practices his profession extends into two states. A professional's reputation can be damaged in the opinion of his neighbors and community members, his out-of-state clients or potential clients, as well as members of the general public in the state in which the libel per se is published. A rule establishing that a libel per se cause of action accrues where a professional is licensed or does business creates many problems in its application. For example, what would result if a plaintiff is licensed in more than one state or by a federal court or agency? Should a court look to the place of first injury, any injury or the place of greatest injury? How would the anti-forum shopping purposes of Missouri's borrowing statute be served if a professional could claim a libel per se ac-

**2.** Section 516.100, RSMo 1986 reads:
  Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of

sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment.

tion originates in any state where he is licensed or conducts his trade or in any state where the publication is circulated? To avoid such problems, the key consideration in determining where a cause of action for libel per se originates for purposes of the borrowing statute is the place of first publication.

■ Finally, Finnegan argues that a determination that a multi-state libel per se of an attorney's professional reputation accrues in the state where the attorney is licensed to practice law is consistent with the "significant relationship" rule used to determine which state's substantive laws should apply in a conflict of laws situation. This argument is rejected because Missouri's borrowing statute pre-empts any conflict of laws question. The borrowing statute constitutes a codification by the Missouri Legislature of a conflicts rule. *Dorris v. McClanahan, supra,* 725 S.W.2d at 871; *Gates v. Trans World Airlines,* 493 S.W.2d 668, 669 (Mo.App.1973). The effect of § 516.190 is to adopt and make as Missouri's own the statute of limitations of another state. No conflict of law question is presented when § 516.190 is involved. *Bowling v. S.S. Kresge Co.,* 431 S.W.2d 191, 193 (Mo.1968).

Finnegan cites *Dowd v. Calabrese,* 589 F.Supp. 1206 (D.D.C.1984) in support of his argument. However, *Dowd* is not persuasive authority because in it the federal court having diversity jurisdiction applied conflict of law principles to determine which substantive law to apply. *Dowd* is not persuasive authority because in it the federal court having diversity jurisdiction applied conflict of law principles to determine which substantive law to apply. *Dowd* is not authority for the issues before this court.

Accordingly, the judgment dismissing Finnegan's petition for libel per se due to the bar of the Kansas one-year statute of limitations is affirmed.

All concur.